IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BORGIA, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-3149 |
| | : | |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE | : | |
| COMPANY | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                             **September 3, 2014**

      Plaintiffs Robert and Emmajean Borgia bring claims against their automobile insurer, State Farm Mutual Automobile Insurance Company (State Farm), for breach of contract, bad faith, and loss of consortium arising out of State Farm's refusal to pay and unreasonable delays in processing their claim for underinsured motorist benefits.  Plaintiffs contend they are entitled to recover the full policy limits of $750,000, given the extent of Robert Borgia's injuries and other damages.  In response to Plaintiffs' discovery requests, State Farm produced its claims file but redacted certain file entries and withheld entirely other documents contained in the file based on the work product doctrine and/or the attorney-client privilege.  In some instances, State Farm also asserted the redacted or withheld material was not relevant.  Plaintiffs contest State Farm's invocation of the work product doctrine as to much of the withheld material and ask this Court to compel State Farm to produce a subset of the material referenced in State Farm's privilege log.  Upon consideration of the parties' letter briefs and the relevant case law, and after reviewing the disputed documents *in camera*, the Court will grant in part and deny in part Plaintiffs' request as set forth below.

**BACKGROUND**

In July 2012, Robert Borgia was involved in a car accident in which the driver of the other car was at fault. As a result of the accident, Robert sustained serious physical and cognitive injuries which rendered him unable to work or to care for his wife, Emmajean Borgia, who suffers from stage two progressive multiple sclerosis. In February 2013, Plaintiffs notified State Farm of their intention to pursue an underinsured motorist claim.[1] In April 2013, State Farm requested that Plaintiffs provide "a medical specials demand package for our review and evaluation of the Underinsured Motorist claim," with the words "'UIM Demand' clearly visible on the cover page." Apr. 16, 2013, letter from State Farm to Pls. In response to State Farm's request, Plaintiffs submitted a good faith demand on May 17, 2013, requesting that State Farm tender the full policy limits of $750,000. The letter expressed Plaintiffs' desire to expedite resolution of the claim, "[g]iven Mr. Borgia's accruing medical bills coupled with his inability to obtain employment and his wife's serious condition," and requested that State Farm notify counsel of its response within 20 days. May 17, 2013, letter from Pls. to State Farm at 4. On June 28, 2013, State Farm advised Plaintiffs it was still evaluating their demand package.

Plaintiffs continued to contact State Farm about the status of their claim, and in a letter dated September 12, 2013, they reiterated their policy limits demand, providing State Farm with additional medical records in support of their position that "Mr. Borgia's injuries and damages [we]re worthy of the full value of his UIM limits in the amount of $750,000." Sept. 12, 2013, letter from Pls. to State Farm at 3. The letter also reiterated Plaintiffs' desire to expedite

---

[1] Although Plaintiffs' February 5, 2013, letter to State Farm is not in the record, the Court assumes this communication, like Plaintiffs' later communications with State Farm, was by counsel. *See* State Farm's Aug. 14, 2014, letter to the Court at 3 (asserting Plaintiffs were represented by counsel at the outset of their uninsured motorist claim).

resolution of the claim, this time noting Plaintiffs would "proceed with litigation if the matter [was] not resolved shortly." *Id.* State Farm again advised Plaintiffs it needed more time to evaluate Mr. Borgia's medical records. *See* Compl. ¶¶ 37-38.

In November 2013, State Farm retained the law firm of Forry Ullman, its current defense counsel, in connection with Plaintiffs' claim. State Farm advised Plaintiffs of counsel's involvement with the claim on November 21, 2013, and defense counsel appears thereafter to have played a lead role in communicating with Plaintiffs about settlement.

In January 2014, State Farm requested that Plaintiffs provide "Statements Under Oath" (SUOs), which were taken on February 7, 2014. Shortly before taking the SUOs, State Farm offered to settle the underinsured motorist claim for $300,000; after the SUOs, State Farm increased its settlement offer to $350,000. Plaintiffs rejected both settlement offers, which, in their view, failed to adequately account for Robert Borgia's injuries, pain and suffering, or economic losses, or Emmajean Borgia's consortium claim. After the SUOs, State Farm requested an independent medical examination of Robert Borgia.

On April 29, 2014, Plaintiffs commenced this action by filing a Complaint in the Court of Common Pleas of Lehigh County, asserting claims for breach of contract, bad faith, and loss of consortium. Plaintiffs faxed a courtesy copy of the Complaint to State Farm on May 5, 2014. State Farm removed the case to federal court and promptly moved to dismiss the bad faith claim.[2] After hearing argument, this Court denied State Farm's motion and entered a scheduling order.

---

[2] State Farm also moved to dismiss Plaintiffs' request for punitive damages, attorneys' fees, and bad faith damages as to the loss of consortium claim. Plaintiffs agreed to withdraw their request for such relief from the *ad damnum* clause of the loss of consortium count.

On August 11, 2014, Plaintiffs wrote to the Court to request a teleconference to address the parties' discovery dispute regarding State Farm's assertion of the work product doctrine as to portions of its claims file. Following a teleconference and further briefing from the parties, the Court directed State Farm to produce the withheld material for *in camera* review, which the Court has since conducted.

**DISCUSSION**

The documents Plaintiffs seek consist of (1) entries in State Farm's electronic claims log regarding the company's assessment of liability for the accident and available coverage, valuation of the claim, settlement authority, reserve amounts, and updates made to various categories of information; (2) evaluations of Plaintiffs' claim prepared by claims personnel in November 2013 and February 2014; (3) emails among claims personnel regarding settlement authority; and (4) an asset report for Virginia Shelton, the driver of the other car involved in the accident.[3] State Farm has invoked the work product doctrine as to all of these documents, most of which reflect the mental impressions of the company's claims personnel regarding Plaintiffs' claim.

The work product doctrine "is governed, even in diversity cases, by a uniform federal standard embodied in [Federal Rule of Civil Procedure] 26(b)(3)." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Under that standard, a party "[o]rdinarily . . . may not discover documents and tangible things that are prepared in anticipation of litigation or

---

[3] Plaintiffs do not challenge State Farm's invocation of the attorney-client privilege to withhold communications between claims personnel and outside counsel and to redact entries in the electronic claims log reflecting the substance of such communications or actions undertaken for counsel. Plaintiffs also do not challenge State Farm's decision to redact or withhold information regarding unrelated matters on relevance grounds. As a result, State Farm need not produce such materials.

for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Materials prepared in the ordinary course of business, in contrast, are not protected. *See Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); Fed. R. Civ. P. 26(b)(3), advisory committee's note, 1970 Amendment ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."). "The burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine." *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

A document is prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2024 (1970)). Because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D. Pa. 1996) (citation omitted). As numerous courts have recognized, "[a]n insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." *Shaffer v. State Farm Mut. Auto. Ins. Co.*, No. 13-1837, 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2014) (citation omitted); *Robertson v. Allstate Ins. Co.*, No. 98-4909, 1999 WL 179754, at *3 (E.D. Pa. Mar. 10, 1999) (same). This does not mean, however, that the work product doctrine is

wholly inapplicable to insurers' claims files. *See Robertson*, 1999 WL 179574, at *3 (noting a "mere claim of bad faith is not enough to shatter the work-product privilege"); *Garvey*, 167 F.R.D. at 394 (holding insurer properly withheld certain claims file documents based on the work product doctrine). Rather, "[a]t some point in its investigation, . . . an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." *Garvey*, 167 F.R.D. at 394.

In evaluating whether State Farm has properly invoked the work product doctrine, this Court must first determine when State Farm reasonably anticipated litigation regarding the Borgias' claim. This analysis includes both a subjective and an objective component. While the court must initially focus on the state of mind of the party preparing, or ordering preparation, of the document, that person's anticipation of litigation must be objectively reasonable for the work product protection to apply. *See Martin*, 983 F.2d at 1260. A party's anticipation of litigation is objectively reasonable if "there existed an identifiable specific claim or impending litigation when the materials were prepared." *Montgomery Cnty. v. Microvote Corp.*, 175 F.3d 296, 305 (3d Cir. 1999) (Greenberg, J., concurring) (citation and internal quotation marks omitted); *see also Martin*, 983 F.2d at 1260.

Applying this standard to the facts of this case, the Court concludes State Farm reasonably anticipated litigation regarding Plaintiffs' claim by November 21, 2013, when the company retained outside counsel to assist it in handling the claim. Although Plaintiffs did not actually commence litigation against State Farm until April 2014, they threatened to "proceed with litigation" seven months earlier, in September 2013, if the claim was "not resolved

shortly."[4]  Pls.' Sept. 12, 2013, letter to State Farm at 3.  This threat of litigation was made in the context of a second demand for payment of full policy limits of $750,000.  By the time State Farm hired counsel, two months had passed since State Farm threatened litigation and while State Farm had not yet made a settlement offer, it is apparent Plaintiffs' demand far exceeded State Farm's valuation of the claim.  In these circumstances, the Court concludes State Farm reasonably anticipated litigation with Plaintiffs regarding their underinsured motorist claim no later than November 21, 2013.

The Court rejects State Farm's assertion that it reasonably anticipated litigation with Plaintiffs at the inception of the underinsured motorist claim in February 2013 or, at a minimum, when Plaintiffs made their initial policy limits demand on May 17, 2013.  State Farm has not pointed to anything in the record suggesting it actually anticipated litigation in February or May 2013, and the fact that State Farm did not seek to involve counsel in the claim until November 2013 cuts against the contention that State Farm believed litigation was likely six months earlier.  The mere fact that Plaintiffs were represented by counsel at the outset of the underinsured motorist claim, without more, says nothing about the likelihood the claim would end up in litigation.  While Plaintiffs' May 17, 2013, letter included a demand for payment of policy limits and requested a response within 20 days, State Farm itself had requested the demand to facilitate its evaluation of the claim, and the letter did not mention (much less threaten) litigation if either the demand or the deadline was not met.  State Farm argues the implication of Plaintiffs' "good faith demand" is that State Farm would be acting "in bad faith" if policy limits were not

---

[4] Plaintiffs deny their September 12, 2013, letter included a threat of litigation, instead characterizing the letter as "merely encourag[ing] State Farm to issue benefits to their own insured given the overwhelming objective medical evidence confirming plaintiffs' injuries and damages."  Pls.' Aug. 25, 2014, letter to the Court at 2.  The plain language of the September 12 letter—which stated Plaintiffs would "proceed with litigation if the matter is not resolved shortly"—contradicts this characterization.

tendered.  State Farm's Aug. 26, 2014, letter to the Court at 1.  But it is not at all clear to this Court that this interpretation is correct or that State Farm in fact understood the letter to threaten a bad faith claim.

Because the Court concludes State Farm did not reasonably anticipate litigation regarding Plaintiffs' underinsured motorist claim until November 21, 2013, materials prepared before this date cannot "fairly be said to have been prepared or obtained because of the prospect of litigation."  *In re Grand Jury Proceedings*, 604 F.2d at 803.  The Court will therefore order State Farm to produce in unredacted form all documents or entries created or obtained before November 21, 2013—including documents and entries relating to reserves[5]—and withheld based on the work product doctrine.  With regard to the three undated documents included in State Farm's privilege log, State Farm need not produce the document bearing Bates numbers 236-243, as that document appears to have been created after November 21, 2013.  State Farm shall produce unredacted versions of the other undated documents—Bates numbers 31 ("Liability" section) and 52 (reserve amounts)—unless State Farm has a reasonable, good faith basis to conclude the redacted material was not generated until November 21, 2013, or later.

---

[5] State Farm withheld reserve information on both work product and relevance grounds.  Acknowledging that district courts in the Third Circuit are divided on the issue, State Farm argues reserves are set for reasons unrelated to litigation strategy and are therefore not relevant to Plaintiffs' claims and not discoverable.  As several district courts in this Circuit have recognized, however, the establishment of reserves would serve little, if any, purpose unless the reserves "have some relationship to the insurer's estimation of the insured's potential liability," and the amount set aside for reserves is therefore "'germane to any analysis [the defendant-insurer] made of' the claim's value and is relevant to the determination of whether the defendant-insurer acted in bad faith in processing the claim."  *Shaffer*, 2014 WL 931101, at *3 (quoting *N. River Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 872 F. Supp. 1411, 1412 (E.D. Pa. 1995)).  The Court agrees with this analysis and concludes reserve information is relevant to Plaintiffs' bad faith claim.  The Court expresses no opinion regarding the admissibility of such information as that issue is not before the Court at this time.

As to the documents created on or after November 21, 2013, the Court must next consider Plaintiffs argument that even if State Farm reasonably anticipated litigation regarding their underinsured motorist claim, documents reflecting its evaluation of the claim are not protected by the work product doctrine because such documents "would have been prepared in the ordinary course of business anyways." Pls.' Aug. 25, 2014, letter to the Court at 2. This argument has some force since, as noted, an insurance company "has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it by its insureds." *Shaffer*, 2014 WL 931101, at *2 (citation omitted). As many cases acknowledge, however, at some point in the process, the insurer's activity "shift[s] from mere claims evaluation to defending against the prospect of litigation on an objectively reasonable basis," and documents prepared by claims personnel after this point are within the work product protection. *McCrink v. Peoples Benefit Life Ins. Co.*, No. 04-1068, 2004 WL 2743420, at *7 (E.D. Pa. Nov. 29, 2004); *see also Keefer v. Erie Ins. Exchange*, No. 13-1938, 2014 WL 901123, at *5 (M.D. Pa. Mar. 7, 2014) (denying insured's request to compel production of insurer's entire claims file "without any redactions for documents falling under the work-product doctrine" and holding insured was entitled to discovery regarding insurance adjuster's opinions, mental impressions, and conclusions "formed while investigating [an underinsured motorist] claim in the ordinary course of business and not formed with litigation reasonably anticipated"); *Atiyeh v. Liberty Mut. Ins. Co.*, No. 00-2661, 2000 WL 1796420, at *1 (E.D. Pa. Nov. 15, 2000) (ordering production of withheld documents for *in camera* review to permit court to determine when the defendant insurer's "focus changed from routine claims[] handling to actions in anticipation of litigation"); *Garvey*, 167 F.R.D. at 394. For the reasons set forth above, and after *in camera* review of the withheld documents, this Court concludes State Farm's activity "shifted from mere claims evaluation to defending against

9

the prospect of litigation on an objectively reasonable basis" by November 21, 2013, when it retained outside counsel in connection with Plaintiffs' underinsured motorist claim. *See McCrink*, 2004 WL 2743420, at *7.

Finally, Plaintiffs argue that even if the work product doctrine applies to the materials in question, the Court should nevertheless compel disclosure because they have a substantial need for the withheld information. As Plaintiffs note, the work product doctrine is not "an absolute bar to discovery of materials prepared in anticipation of litigation." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003). Even when materials are properly characterized as work product, they may be discovered if (1) they are otherwise discoverable under Rule 26(b)(1), and (2) the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[6] Fed. R. Civ. P. 26(b)(3)(A). Mindful that "a mere allegation of bad faith is insufficient to overcome the work product privilege," *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996), the Court is not persuaded Plaintiffs have made the showing necessary to obtain disclosure of work-product-protected materials, particularly where depositions of State Farm's claims personnel remain a viable means of obtaining at least some of the information Plaintiffs seek, *see McCrink*, 2004 WL 2743420, at *7 (finding plaintiffs "general allegation of bad faith" insufficient to meet the two-prong standard for overcoming work product protection "when the plaintiffs have had the opportunity to depose the claims officials who handled the claim").

---

[6] When ordering discovery of work product, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such "core" or "opinion" work product is entitled to "greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *Cendant*, 343 F.3d at 663. The parties have not addressed whether any of the withheld materials would qualify as opinion work product.

Accordingly, the Court will deny Plaintiffs' request to compel disclosure of the post-November 21, 2013, work product without prejudice at this juncture.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J